## Conshohocken Borough's Petition.

*Robert T. Potts* and *Irvin P. Knipe*, for petitioners.

*Dennis O'Neill* and *Charles D. McAvoy*, for remonstrants.

KNIGHT, J., March 28, 1929.—The Borough of Conshohocken was incorporated by Special Act of Assembly approved May 15, 1850, P. L. 1051. Its charter was amended by the Special Act approved March 22, 1870, P. L. 522.

On Feb. 21, 1929, the burgess and fourteen of the fifteen councilmen of the borough presented their petition, praying leave to surrender their special charter with all of the rights and privileges granted the borough by the provisions of the special acts above mentioned and to accept the provisions of "The General Borough Act" approved May 4, 1927, P. L. 519.

The court fixed Friday, March 15, 1929, for a hearing on the petition, and directed that notice should be given by advertisement in certain newspapers. On March 15, 1929, the matter was continued to March 21, 1929, at which time a hearing was held before the writer of this opinion.

The petitioners proved the proper enactment of a resolution by the borough council, approved by the burgess, signifying its desire to surrender the special charter and accept the provisions of "The General Borough Act" of 1927. Section 107 of this latter act provides, *inter alia*, that any borough or incorporated town acting under any local or special act of assembly may surrender the provisions of its special acts in their entirety and be governed by the provisions of the General Borough Act by presenting a petition to the Court of Quarter Sessions of the proper county, setting forth the desire of said borough so to do. The petition may be made by the burgess and council or by twenty-five qualified electors of the borough. Upon the presentation of the petition, it is the duty of the court to fix a day for a hearing, of which

notice shall be given as directed by the court. At such hearing, any inhabitant of the borough may remonstrate against the granting of the petition, and the court may grant or refuse the prayer of the same.

At the hearing, an appearance was entered for certain remonstrants and an imposing petition was filed, signed, according to the evidence, by over 1200 residents of the borough, opposing the granting of the prayer of the petition.

But one witness was called by the remonstrants, and we gather from his testimony that the reasons urged against the proposed action of the borough authorities are:

1. That under the present charter the county pays damages incident to the opening of streets, while under the Borough Act these damages must be paid by the borough.

2. That under the Borough Act the number of councilmen may be reduced from three to one for each ward.

3. That the borough tax rate is now limited to ten mills, while under the Borough Act it may be raised to fifteen mills.

None of these objections do we consider particularly meritorious. True it is that in Conshohocken and two other boroughs in our county damages for the opening of streets are paid by the county, while in our twenty-one other boroughs these damages are paid by the residents thereof. This inequality is unjust to residents of the latter class of boroughs, and it is to the credit of the petitioners that they are fair minded enough to be willing to give up the advantage of this unfair discrimination.

The second reason is an unwarranted reflection on the ability of the people of Conshohocken to govern themselves. The trend of modern thought and practice is toward smaller representative bodies. If the people of Conshohocken desire three councilmen to a ward, they can retain that number; if, on the other hand, they should determine in the future that their best interests would be advanced by reducing the representation to one councilman to a ward, why should they not be given the power to put their wishes into effect?

The power to raise the tax rate from ten to fifteen mills is a distinct advantage rather than an objection. The people today demand far more of their governments than did the people when Conshohocken was chartered. This ever-widening scope in the activities of the civic authorities, together with the increased cost of everything, has made government of our municipalities, from a financial standpoint, a difficult problem. It will be to the advantage of the borough to be able to raise by taxation the money necessary to meet the needs of a progressive community.

Over against these alleged objections to accepting "The General Borough Act" may be set certain specific advantages, among which may be mentioned: The right given by the Code, but not now enjoyed, to condemn outside land for a sewage-disposal plant; the right to combine with West Conshohocken in building a sewerage-disposal system, and the right of opening certain streets now blocked by decision of the appellate court.

Over and above these specific rights, needed at the present moment, there is the great advantage of being governed under a modern code, in which is incorporated the experience of a hundred years in borough government. The fact that this code is working out successfully in over 98 per cent. of the boroughs of the Commonwealth demonstrates its merits.

The day of the special act with its attending evils is passed. The demand of the times is for uniformity in legislation, and we see no reason why Con-

shohocken should not be allowed to get in step with the overwhelming majority of her sister boroughs in the State.

In arriving at this conclusion, we have not overlooked the petition signed by approximately one-third of the voters and taxpayers of the borough opposing the prayer of the petition. Only one of the remonstrants appeared to give the court the benefit of his reasons for opposing the present application. Just what actuated the others in signing the petition, and just how much they knew of the merits of the controversy when they signed, is, of course, unknown. We have considered the petition of the remonstrants, however, together with the other evidence, and have arrived at the conclusion that the application now before us should be granted.

And now, March 28, 1929, the prayer of the petition of the Burgess and Town Council of the Borough of Conshohocken for leave to surrender all the provisions of the special acts of assembly mentioned in the petition in their entirety and to accept the provisions of, and hereafter to be governed by, "The General Borough Act" approved May 4, 1927, P. L. 519, is granted, and upon the recording of this decree in the office of the Recorder of Deeds in and for the County of Montgomery, the Borough of Conshohocken shall be subject to all the provisions of the General Borough Act, *supra*, and the local and special acts of assembly in force in said borough shall be annulled in their entirety, or so far as they are inconsistent with the provisions of this act, and henceforth the title of said borough shall be "The Borough of Conshohocken." From Aaron S. Swartz, Jr., Norristown, Pa.